IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA COFFEY, on her own behalf and on behalf
of the estate of ANDREW CRUTCHER, deceased,
and also, as next friend, on behalf of her minor
grandchildren, JOANELLE CRUTCHER,
RACHELLE CRUTCHER, ALEX BENALLY,
ANDREW CRUTCHER, VICK CRUTCHER,
KITANA CRUTCHER, and DREW CRUTCHER,

       Plaintiffs,

vs.                                              No. CIV 08-0588 MV/WDS

UNITED STATES OF AMERICA,

       Defendant.


DIANA COFFEY and DIANA COFFEY
on behalf of her minor grandchildren I-VII,
and the ESTATE OF ANDREW CRUTCHER,

       Plaintiffs,

vs.                                              No. CIV 09-0028 JB/LFG

McKINLEY COUNTY as it relates to its
DETENTION CENTER and UNKNOWN
STAFF NURSE, and UNKNOWN DETENTION
GUARDS 1-10, at the McKINLEY COUNTY
ADULT DETENTION CENTER,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss, filed February 2, 2011 (Doc. 47). The Court held a hearing on May 20, 2011 concerning only the Plaintiffs' claims against Defendant McKinley County (the "County"), which is the owner and

operator of the McKinley County Adult Detention Center ("MCADC") in Civ. No. 09-0028 JB/LFG.  The primary issue is whether the Court should dismiss Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, and Count X of Plaintiff Diana Coffey's First Amended and Consolidated Complaint, filed January 24, 2011 (Doc. 46)("First Amended Complaint"), with prejudice.  Plaintiffs' claims in Counts II, III, and IV under 42 U.S.C. § 1983 fail to state a claim for which relief may be granted.  The Court will grant the County's Motion to Dismiss as to Counts II and IV.  The Court will dismiss Count III, but Plaintiffs shall have twenty days to amend the First Amended Complaint as to Count III.  Plaintiffs' claims in Counts V, VI,[1] VII, IX and X, brought under the New Mexico Tort Claims Act fail, because Plaintiffs did not submit a timely notice of the tort claims. Count VIII, which seeks relief for deprivation of familial relationships also fails to state a claim for relief.

## FACTUAL BACKGROUND

In 2006, Andrew Crutcher was convicted of discharging a firearm, a misdemeanor, on the Reno-Sparks Indian Colony in Nevada.  After serving six months in a Nevada facility, the Bureau of Indian Affairs ("BIA") transferred him to the MCADC in McKinley County. See First Amended Complaint, ¶¶ 13, 18, 28, at 4-6.  Crutcher was required to take medication for his heart condition. See First Amended Complaint, ¶ 19, at 5.

While at MCADC, Crutcher called his mother, Plaintiff Diana Coffey ("Coffey"), and advised her that he was neither receiving medical attention nor his required medication.  See First

---

[1] Counts V and VI are for the negligent and intentional infliction of emotional distress suffered by Crutcher prior to his death (as compared to Counts IX and X, which are for the negligent and intentional inflection of emotion distress suffered by Coffey and Crutcher's minor children upon Crutcher's death).  The New Mexico's Wrongful Death Act, NMSA 1978, § 41-2-1 to 41-2-4 allows a cause of action for death when "caused by the wrongful act, neglect, or default of another . . . .". See NMSA § 41-2-1.

Amended Complaint, § 28, at 6. Coffey did not know how to reach the MCADC officials to advise them of Crutcher's medical needs. See First Amended Complaint, § 29, at 6. On October 8, 2006, Crutcher underwent some screening at MCADC, and he reported his medical condition and his need for cardiac medications. See First Amended Complaint, ¶ 32, at 7. On January 18, 2007, MCADC reported to be "looking into" his heart medication. See First Amended Complaint, ¶ 34, at 7. On January 26, 2007, the MCADC clinic asked that Crutcher be evaluated for medications, because he reported cardiomyopathy since 2005. On February 8, 2007, a correctional officer took Crutcher to the MCADC clinic. The gravely ill Crutcher was then transported to a Gallup hospital where he died. See First Amended Complaint, ¶ 38, at 8.

On June 4, 2007, counsel for Crutcher's family wrote a letter to MCADC asking for any incident reports involving the death of Crutcher and also information as to who owns and operates MCADC. See Letter from Treva J. Hearne to McKinley Adult Detention Center (dated June 4, 2007), filed February 18, 2011 (Doc. 50-2)("June 4, 2007 letter"). On May 8, 2007, counsel for Crutcher's family wrote to the Reno-Sparks Indian Colony Tribal Court asking for Crutcher's file. See Letter from Ivy Wright Bryan to the Reno-Sparks Indian Colony Tribal Court (dated May 8, 2007), filed February 18, 2011 (Doc. 50-3). On August 30, 2007, counsel for Crutcher's family wrote to the Washoe County Sheriff's Office in Reno, Nevada, asking for Crutcher's file. See Letter from Treva J. Hearne to Washoe County Sheriff's Office (dated August 30, 2007), filed February 18, 2011 (Doc. 50-3).

On March 25, 2008, more than one year after Crutcher's death, counsel for the Crutcher family advised the McKinley County Clerk and the Risk Management division of the McKinley County Board of Commissioners that, "[p]ursuant to the provisions of the New Mexico Tort Claims Act, Section 41-4-1 et seq., this letter is for the purpose of putting you on notice of a legal claim for

wrongful death on behalf of the estate of Andrew Crutcher . . . ." See Letter from Scott E. Borg to the McKinley County Board of Commissioners (dated March 25, 2008), filed February 18, 2011 (Doc. 50-1)

## PROCEDURAL BACKGROUND

Coffey brings this action on behalf of herself, Crutcher's estate, and Crutcher's seven minor children. She seeks relief from various entities based on differing causes of action, but the only issue before the Court for this opinion is the County's Motion to Dismiss.

The County states that, because of the nature of this motion, it did not seek concurrence of Coffey's counsel. Pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, the County submits its Motion to Dismiss: (i) the Second Cause of Action (for deprivation of basic necessities of life under 42 U.S.C. § 1983); (ii) the Third Cause of Action (for deprivation of life without due process under 42 U.S.C. § 1983); (iii) the Fourth Cause of Action (undefined claim brought under 42 U.S.C. § 1983); (iv) the Fifth Cause of Action (for negligent infliction of emotional distress); (v) the Sixth Cause of Action (intentional infliction of emotional distress); (vi) the Seventh Cause of Action (New Mexico Constitution -- violation of civil rights); (vii) the Eight Cause of Action (due process of deprivation of familial relationships under 42 U.S.C. § 1983); (viii) the Ninth Cause of Action (for negligent infliction of emotional distress); and (ix) the Tenth Cause of Action (for intentional infliction of emotional distress) of Coffey's First Amended and Consolidated Complaints with prejudice.

At the hearing, Coffey agreed to dismissal of Counts II and IV as repetitive of Count I. The Court advised Coffey that, as written, Count III failed to state a claim for a violation of Crutcher's substantive due-process rights. Coffey stated that she believed that Rule 11 of the Federal Rules of Civil Procedure prevented her from giving notice of a claim before a full investigation had been

undertaken.  See Transcript of Hearing at 9:32:29 20 to 9:32:45 24 (taken May 20, 2011)(Hearne)("Tr.").[2]  The Court inquired as to the nature of Coffey's arguments concerning notice under the NMTCA.

> THE COURT: Well, I'll relook at this, look at the Complaint, but I'm inclined to look at that portion as well, so it does look like we're going to have federal claims here, so why don't we take the tort claims here -- let me ask Miss Hearne just a question on this.  Let me make sure I understand what the arguments are.  You did not submit any -- within ninety days any sort of written notice to the state or the government here.
>
> MS. HEARNE: The county.
>
> THE COURT: And so you're relying upon the fact that they just had notice.
>
> MS. HEARNE: Correct.
>
> THE COURT: Correct.  All right.  And you know, I've been in this area before, but I guess my memory is that they have to have -- they have to have notice of the claim, not just of the incident, and you think you get there?
>
> MS. HEARNE: I think that the notice that was given, Your Honor, gives them notice of the claim, however the discovery of the fact we had a claim against McKinley County was significantly delayed past the date of his death because we did not know what was the cause of death.

Tr. at 9:19:21 16 to 9:20:35 11.

The only information the family had about Crutcher's death was that the BIA was at fault for not providing Crutcher's medication. See Tr. at 9:32:55 1 (Hearne).

> However, we learned at a later date that--much later date, even past March 25, 2008, even though we did go ahead and give notice, that indeed the standard of care was below [what] one would expect in even a detention facility in that he had incurred an infection and no one knew that, Your Honor, at the time.  That discovery occurred much later, but we did, Your Honor, make certain that I inquired and gave them full notice there--the death occurred and I believe the letter states that this death occurred in your facility . . .

---

[2] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

-5-

Tr. at 9:33:04 3 to 9:34:13 21 (Hearne). Coffey argued that the June 4, 2007 letter to the MCADA put the County on notice of a potential tort claim because the MCADC did not object to her saying that Crutcher died at MCADC instead of pointing out that he died in the hospital. See Tr. at 9:34:51 11 to 9:34:57 13 (Hearne).

Coffey also argued that the correspondence to other governmental entities -- the Washoe County Sheriff's Office on August 30, 2007 and the letter to the Reno-Sparks Indian Colony Tribal Court on May 8, 2007 indicated a proper investigation under rule 11 and to show the family was using due diligence to find out what had happened to Crutcher. See Tr. at 9:35:14 19 to 9:36 18 10 (Hearne). Coffey also argued that any action taken by an attorney constitutes notice of a potential tort claim. See Tr. at 9:36:42 18 to 9:37:10 25 (Hearne).

The parties requested, and the Court allowed. supplemental briefing on Coffey's contention that the County had constructive notice of her claim and actual notice of the occurrence, and therefore the County should be equitably estopped from relying on the six-month notice provision of NMSA § 41-4-16 C.

The parties have submitted their arguments and cases in support of, and in opposition to Coffey's arguments. See Supplemental Authorities on the Issue of the Government Claim Statute, filed May 24, 2011 (Doc. 63); Defendants' Response to Plaintiff's Supplemental Authorities, filed May 30, 2011 (Doc. 64).

## FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a cause of action for the "failure to state a claim upon which relief can be granted . . ." When ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes the truth of the "well-pleaded" facts in the complaint and draws reasonable inferences in the light most favorable to the plaintiff. Phillips v. Bell, 365 F.

App'x 133, 137 (10th Cir. 2010)(unpublished opinion) (citing Dias v. City and County of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009)). "This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(stating that courts are not required to accept as true a legal conclusion couched as a factual allegation). Pursuant to Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, the standard is whether the plaintiff's allegations, assumed to be true, have set forth a plausible, not speculative, claim for relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

## LAW REGARDING CLAIMS UNDER 42 U.S.C. § 1983

Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

In this case, the County is a state actor which may be liable for any alleged constitutional violations. In Estelle v. Gamble the United States Supreme Court held that a claim of deliberate indifference to the serious medical needs is cognizable under § 1983 as a violation of the eighth amendment:

This is true whether the indifference is manifested by prison doctors in their response to the prisoners' needs or by prison guards in intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed. Regardless of how evidenced deliberate indifference to a prisoner's serious illness or injury states the cause of action under § 1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

## NEW MEXICO TORT CLAIMS ACT

The New Mexico Tort Claims Act, NMSA (1978) §§ 41-4-1 to 41-4-29 (NMTCA), grants immunity from liability to employees of a governmental entity for any tort that occurs while such employees are "acting within the scope of duty," unless the NMTCA otherwise specifically waives immunity. See M.D.R. v. State ex rel. Human Servcs. Dep't, 114 N.M. 187, 188, 836 P.2d 106, 107 (Ct. App. 1992). Governmental entities and public employees shall be liable only under certain exceptions that the NMTCA specifies. See NMSA § 41-4-4. The rights, procedures, limitations, and conditions prescribed in the NMTCA limit the right to sue and any recovery under the NMTCA. See NMSA § 41-4-4. The statute advises the entities to be informed of the legal action. See NMSA § 41-4-16(A). Claims for wrongful death must be presented within six months of the death. See NMSA § 41-4-16(C). The NMTCA specifically provides: "No Suit or action for which immunity has been waived under the Tort Claims Act . . . shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence." NMSA § 41-4-16(B).

## ANALYSIS

Coffey's claims in Counts II, III, and IV under 42 U.S.C. § 1983 fail to state a claim for which relief may be granted. The Court will grant the County's Motion to Dismiss as to Counts II and IV. The Court will dismiss Count III, but Coffey shall have twenty days to amend her First Amended Complaint as to Count III. Coffey's claims in the V, VI, VII, IX, and X causes of action in her complaint brought under the NMTCA fail, because Coffey did not submit a timely notice of tort claims. Coffey's claims for deprivation of familial relationships in Count VIII also fails to state a claim for relief.

**I.    COFFEY'S CLAIMS IN THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION BROUGHT UNDER 42 U.S.C. § 1983 FAIL TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.**

Counts I, II, III, and IV all allege constitutional violations and are brought pursuant to 42 U.S.C. 1983. Coffey alleges violations of the Eighth and Fourteenth Amendments. Count I alleges cruel and unusual punishment in that the County, acting through its employees at the MCADC, was deliberately indifferent to Crutcher's serious medical needs. Counts II, III and IV more or less repeat and duplicate the allegations of Count I. For example, Count I argues that the callous disregard of Crutcher's

> obvious and known serious medical needs -- including, but not limited to, unreasonable delays in providing treatment; failure to administer life sustaining medication, the refusal to transfer and release him to an appropriate medical facility in a timely manner even after his continued degeneration in the Detention Facility essentially transformed his sentence for a first time misdemeanor into a death sentence.

First Amended Complaint, ¶ 52, at 10-11.

Count II reiterates the County's indifference to Crutcher's failing health. See First Amended Complaint, ¶ 54, at 11. Count III again references County Defendants' disregard for Crutcher's life. See First Amended Complaint, ¶ 57, at 11. Count IV[3] charges that the County subjected Crutcher to extreme degradation. All of these allegations, if proven, would constitute a § 1983 claim: A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).

---

[3] Count IV states that it is against the County of McKinley and the United States of America. Because the hearing did not involve the parties in the consolidated case, Civ. 08-588 MV/WDS, Count IV's dismissal is only against the County of McKinley.

At the May 20, 2011 hearing, Coffey agreed to dismissal of Counts II and IV as repetitive of Count I. Accordingly, the County's Motion to Dismiss as to Counts II and IV is granted.

Count III alleges a violation of Crutcher's substantive due-process rights. Such a claim requires a showing that the governmental conduct in question "shocks the conscience" of federal judges. See Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)(citing Collins v. City of Harker Heights Tex., 503 U.S. 115, 126 (1992)). The United States Court of Appeals for the Tenth Circuit gave additional guidance for the "shocks the conscience" standard for substantive due-process claims:

> (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety.

Uhlrig v. Harder, 64 F.3d at 573.

At the May 20, 2011 hearing the Court advised Coffey's counsel that, as written, Count III failed to state a claim for a violation of Crutcher's substantive due-process rights.[4] Coffey's counsel advised the Court that she had additional medical evidence to support this claim, and the Court granted leave to amend. See Tr. at 9:13:27 22 to 9:16:34 6; 9:14:32 14 to 9:14:51 20 (Hearne). Accordingly, Count III is also dismissed, but Coffey shall have twenty days to amend her First Amended Complaint as to Count III.

---

[4] Count III alleges that the County allowed Crutcher "to degenerate, suffer and die instead of adopting simple life saving measures and procedures . . . ." First Amended Complaint at 11.

## II. COFFEY'S CLAIMS IN THE FIFTH, SIXTH, SEVENTH, NINTH, AND TENTH CAUSES OF ACTION IN HER COMPLAINT BROUGHT UNDER THE NMTCA FAIL BECAUSE COFFEY DID NOT SUBMIT A TIMELY NOTICE OF TORT CLAIMS.

Because the notice provisions of the NMTCA are jurisdictional, see NMSA § 41-4-1 B, New Mexico courts have narrowly construed whether actual notice of the likelihood of litigation has been given to the proper entity, see NMSA § 41-4-16 A. See Marrujo v. N.M. State Highway Dept., 118 N.M. 753, 761, 887 P.2d 747, 762 (1994)("Mere notice of an accident will not necessarily put the government entity on notice that it may become the defendant in a lawsuit."); Lewis v. City of Santa Fe, 2011 WL 2041815, *2-3 (N.M. Ct. App. 2011)(unpublished opinion)(holding that an accident report prepared by one state agency did not confer notice on another state agency).

The issue of actual notice includes constructive notice; *i.e.*, whether, considering all of the facts and circumstances, the governmental entity should have been on notice of the likelihood of litigation. Put another way, the courts consider whether notice could be inferred from the facts of the case. In Lopez v. State, 122 N.M. 611, 930 P.2d 146 (1996), the Supreme Court of New Mexico held that, when "the governmental entity allegedly at fault has knowledge of the facts and circumstances of the occurrence, it may also have knowledge of its own potential liability. A reasonable inference of the likelihood of suit may arise from such knowledge." Lopez v. State, 122 N.M. at 616, 930 P.2d at 151.

At the hearing, Coffey stated that she believed rule 11 prevented her from giving notice of a claim before a full investigation had been undertaken. See Tr. at 9:32:29 20 to 9:32:45 24 (Hearne). The only information the family had about Crutcher's death was that the BIA was at fault for not providing Crutcher's medication. See Tr. at 9:32:55 1 (Hearne).

> However, we learned at a later date that -- much later date, even past March 25, 2008, even though we did go ahead and give notice, that indeed the standard of care

-11-

>was below [what] one would expect in even a detention facility in that he had incurred an infection and no one knew that, Your Honor, at the time. That discovery occurred much later, but we did, Your Honor, make certain that I inquired and gave them full notice there -- the death occurred and I believe the letter states that this death occurred in your facility . . . .

Tr. at 9:33:04 3 to 9:34:13 21 (Hearne).

Rule 11 governs attorneys' ethical obligations to the court, and applies to pleadings and other documents submitted to a court. It has no application in providing a governmental entity with notice that the entity may be sued. See Fed. Rule of Civ. P. 11(a), (b). While the bar's ethical rules constrain a lawyer signing a tort claims notice, the notice is merely to put the governmental entity on notice of a potential claim so that everyone can investigate. See Lopez v. State, 122 N.M. at 614, 930 P.2d at 149 (stating that the "purpose of the notice requirements of the Tort Claims Act 'is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit,'" and that "[n]otice allows the governmental entity against whom a claim is made, or its insurer, to investigate the facts underlying an incident while they are still fresh and to question witnesses"). Because a notice often must be filed early in an investigation, investigation is rarely complete. In contrast, in federal court, rule 11 imposes a higher burden:

>By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

It is Coffey's opinion that the June 4, 2007 letter gave actual notice of a tort claim to the County, because the MCADC did not object to her saying that Crutcher died at MCADC instead of pointing out that he died in the hospital. See Tr. at 9:3451 11 to 9:34:57 13 (Hearne). Coffey also argued that the correspondence to other governmental entities -- the Washoe County Sheriff's Office on August 30, 2007 and the letter to the Reno-Sparks Indian Colony Tribal Court on May 8, 2007 indicated a proper investigation under rule 11 and showed the family was using due diligence to find out what had happened to Crutcher. See Tr. at 9:35:14 19 to 9:36 18 10 (Hearne). Coffey also argued that any action taken by an attorney constitutes actual notice. See Tr. at 9:36:42 18 to 9:37:10 25 (Hearne)

At the hearing, the parties requested, and the Court allowed, supplemental briefing on Coffey's contention that the County had constructive notice of Coffey's claim and therefore should be equitably estopped from relying on the six-month notice provision of NMSA § 41-4-16 C. The parties submitted their arguments and cases in support of, and in opposition to, Coffey's arguments. See Supplemental Authorities on the Issue of the Government Claim Statute; Defendants' Response to Plaintiff's Supplemental Authorities.

Coffey relies on three cases; each will be discussed in turn. First, in Callaway v. New Mexico Dept. of Corrections, 117 N.M. 637, 875 P.2d 393 (Ct. App. 1994), the Court of Appeals of New Mexico held that there was a fact issue whether the state had actual notice of impending litigation. The plaintiff, who was incarcerated, sustained severe injuries when he was beaten by fellow inmates on February 13, 1990. See Callaway v. N.M. Dep't of Corr., 117 N.M. at 639, 875

P.2d at 395.  On March 3, the plaintiff and his wife sent a letter to the Department of Corrections asking for information about the attack and a summary of the medical records.  Callaway v. N.M. Dep't of Corr., 117 N.M. at 639, 875 P.2d at 395.  The wife next sent a letter to the Governor regarding the incident.   The letter was never found and the contents of the letter was disputed, but the record shows the Governor's office received the letter and forwarded it to the Secretary of the Department of Corrections, advising the Secretary to "take whatever action he deems appropriate." See  Callaway v. N.M. Dep't of Corr., 117 N.M. at 639-40, 875 P.2d at 395-96.  The Department of Corrections acknowledged receipt of the wife's letter to the Governor and informed her that the plaintiff was being treated for injuries and was recovering.  See Callaway v. N.M. Dep't of Corr., 117 N.M. at 640, 875 P.2d at 396.  Subsequent correspondence was between the Department of Corrections and counsel retained by the plaintiff and his wife included a request for immediate action to determine who was responsible for the incident.  See Callaway v. N.M. Dep't of Corr., 117 N.M. at 640, 875 P.2d at 396.  Callaway also contended that he advised his caseworker, an employee of the Department of Corrections, that his wife was working with lawyers about bringing charges and that his caseworker wrote this information in her notes on March 6, 1990.   See Callaway v. N.M. Dep't of Corr., 117 N.M. at 640, 875 P.2d at 396.  Finally, Plaintiff's father stated that he informed the prison chaplain of the likelihood that the Department of Corrections would be sued, but the chaplain denied receiving this communication. See Callaway v. N.M. Dep't of Corr., 117 N.M. at 640, 875 P.2d at 396.

   From the foregoing, the Court of Appeals of New Mexico determined that notice was an issue for the jury.  Several facts were in dispute, but even where there was no dispute, "equally logical but conflicting inferences can be drawn from the facts" thereby rendering summary judgment inappropriate.  See Callaway v. N.M. Dep't of Corr., 117 N.M. at 640, 875 P.2d at 396.

In this case, Crutcher did not die at the facility where he was housed; he died in a local hospital. The investigating agency, the BIA, determined that there was no misconduct on the part of the County Defendants (other than a corrections officer taking Crutcher to the hospital rather than calling an ambulance). See Bureau of Indian Affairs Serious Incident Report, at 15, filed May 24, 2011, (Doc. 63-1)(the "Report"). The correctional officers' statements were taken the day after Crutcher died and the Report was completed on June 20, 2007. See Report, at 24. There is nothing in the Report to alert the County that litigation would ensue.

Counsel's letter to the MCADC merely requested incident reports and the identity of the owner/operator of the facility. See June 4, 2007 letter at 1. Subsequent communications were not with the County, and in none of those communications was the likelihood of litigation apparent. The facts of this case are materially different from those in Callaway and the Court finds that the County was not put on notice, actual or inferential, that litigation was a distinct possibility.

Coffey next cites to Lopez v. State, in which the Supreme Court of New Mexico looked at the totality of the circumstances to determine whether the governmental agencies were on notice of the likelihood of litigation. The plaintiff was injured after she tripped and fell in a courtroom in the Bernalillo County Metropolitan Court ("Metro Court"). She sued both the state and Bernalillo County. See Lopez v. State, 122 N.M. at 613, 930 P.2d at 148. Her case was dismissed, because her attorney had sent the notice to Bernalillo County rather than to risk management as required by the NMTCA. See § 41-4-16 A ("Every person who claims damages from the state . . . shall cause to be presented to the risk management division for claims against the state . . . .").

On appeal, Plaintiff argued that Metro Court had prepared and sent an accident report to the risk management division and therefore both the Metro Court and the state had actual notice. See Lopez v. State, 122 N.M. at 613, 930 P.2d at 148. She further argued that, because the state was

doing business as the Bernalillo County Courthouse, the state was estopped from denying her timely and written notice given to the county manager and clerk. See Lopez v. State, 122 N.M. at 613, 930 P.2d at 148. The Supreme Court of New Mexico ultimately held there was a question of fact whether actual notice had been given and that matter would require an evidentiary hearing. See Lopez v. State, 122 N.M. at 617, 930 P.2d at 152. If the trial court determined actual notice had not been given, then it was to determine whether the state should be estopped from claiming failure to provide timely, written notice. See Lopez v. State, 122 N.M. at 617, 930 P.2d at 152.

Coffey argues that the June, 2007 BIA Report was sufficient to put the County on "full notice that negligence of the medical care of Andrew Crutcher had occurred." Supplemental Authorities at 2 [Doc. 63]. This argument is unpersuasive because the findings of the BIA do not indicate negligence: "The allegation of Flagrant Inattention to Duty against the MCADC is **Unfounded** because the investigation revealed conclusively that the alleged act [of homicide] did not occur. Medical documentation obtained indicated that CRUTCHER was provided medical treatment upon his request. CRUTCHER was at no time denied medical treatment." BIA Report, at 14 (emphasis in original). This Report does not constitute actual notice that litigation was likely as required under the NMTCA. Nor does the report raise an inference of possible litigation when it concluded that Crutcher was never denied medical treatment. The notice of a tort claim was not given to McKinley County until March 25, 2008, more than one year past Crutcher's February 2007 death.

Finally, Coffey cites to Rider v. Albuquerque Public Schools, 122 N.M. 237, 923 P.2d 604 (Ct. App. 1996), for the proposition that minor plaintiffs cannot be held to the actual notice limit in the NMTCA when the adult fails to comply with its provisions.

The Court construes Counts V and VI as claims under the Wrongful Death Act, NMSA 1979 §§ 41-2-1 to 41-2-3 by Crutcher's personal representative, see NMSA § 41-2-3. Crutcher's

children would be entitled to any damages recovered, see NMSA § 41-2-3 C.  However, Rider v. Albuquerque Public Schools, stands for the proposition that a minor who is incapable of asserting his or her own legal rights will not be foreclosed from relief if an adult "not under a legal duty" to act on his or her behalf fails to comply with the notice provisions of the NMTCA.  See  Rider v. Albuquerque Pub. Sch., 122 N.M. at 239-41, 923 P.2d at 606-08.  The primary reason for this rule is that parents and guardians could not be sued for negligence when the child reached the age of majority.  See Rider v. Albuquerque Pub. Sch., 122 N.M. at 241, 923 P.2d at 608.

The eldest of Crutcher's seven children were ten-year old twins at the time of his death.  There is no question that these children could not act on their own behalf.  Counsel represented the children, Crutcher's mother, and Crutcher's estate as early as June 4, 2007, which date was within the six-month notice provision.  Unlike parents, lawyers are under a legal duty to act on their clients' behalf.

In Erwin v. City of Santa Fe, 115 N.M. 596, 855 P.2d 1060 (Ct. App. 1993), a case on interlocutory appeal, the Court of Appeals of New Mexico discussed whether the ninety-day notice provision was unconstitutional as applied to a minor who did not comply with that provision. The Court of Appeals of New Mexico held, that although application of the notice period to a child was not a *per se* violation of due process, fact issues precluded summary judgment.  See Erwin v. City of Santa Fe,, 115 N.M. at 599, 855 P.2d at 1063.  The fact issues in question included when the minor and his father retained counsel.  See Erwin v. City of Santa Fe,, 115 N.M. at 599, 855 P.2d at 1063.  Similarly, in Rider v. Albuquerque Public Schools,  the Court of Appeals of New Mexico noted that when counsel was retained, a fact issue may exist as to whether the minor's rights are protected.  Rider v. Albuquerque Pub. Sch., 122 N.M. at 241, 923 P.2d at 608.

The Court finds no sound reason to extend the holdings of <u>Erwin v. City of Santa Fe</u> and <u>Rider v. Albuquerque Public Schools</u>. Indeed, in a 1983 case, the Court of Appeals of New Mexico held that retention of counsel before the expiration of the NMTCA notice period does not toll the statute when there is no showing that counsel was somehow prevented from giving notice. See <u>Ferguson v. N.M. State Highway Comm'n</u>, 99 N.M. 194, 197, 656 P.2d 244, 247 (Ct. App. 1982). While a child might not have claims, or want to bring claims, against parties for failing to file a proper notice, nothing prevents a child and/or his or her personal representative, parent, or guardian from holding the lawyer responsible.

It is undisputed in this case that Coffey had retained counsel within the NMTCA's six-month limitation period, and no facts have been put before the Court to indicate counsel was somehow prevented from complying with New Mexico law on behalf of Crutcher's minor children. Coffey's failure to comply with NMSA § 41-4-16 bars her claims against the County Defendants in the Fifth, Sixth, Seventh, Ninth, and Tenth Causes of Action. Accordingly, the Court will dismiss these causes of action against the County with prejudice.

### III.   COFFEY'S EIGHTH CAUSE OF ACTION FOR DEPRIVATION OF FAMILIAL RELATIONSHIPS FAILS TO STATE A CLAIM FOR RELIEF.

Coffey alleges in Count VIII of the First Amended Complaint that the County Defendants' "deliberate indifference to Andrew Crutcher's serious medical needs and their refusal to provide timely and adequate care as well as reasonable food and water" led to Crutcher's "suff[ering] an untimely, unnecessary and [a] preventable death." First Amended Complaint, ¶ 75, at 14. She further states that, as a result of the County Defendants' actions, Coffey and Crutcher's children "were deprived of their constitutional right to familial association, society, and companionship, in violation of the Fourteenth Amendment to the United States Constitution." First Amended

Complaint, ¶ 76, at 14. She alleges that the County Defendants were "deliberately indifferent to Plaintiff's and [Crutcher's] childrens' constitutional familial rights, demonstrating reckless and callous disregard for such rights," and that Defendants acted maliciously, wantonly, and oppressively . . . ." Amended Complaint, ¶ 77, at 14-15.

In Trujillo v. Board of County Comm'rs, 768 F.2d 1186 (10th Cir. 1985), the Tenth Circuit Court of Appeals recognized a constitutionally-protected liberty interest in intimate or familial associations. And as the Tenth Circuit stated in Bryson v. City of Edmond, 905 F.2d 1386 (10th Cir. 1990), "'an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required.'" Bryson v. City of Edmond, 905 F.2d at 1393 (quoting Trujillo v. Board of County Comm'rs, 768 F.2d at 1186).

> To allege that "[b]y [specified] acts and conduct . . . defendant intentionally, or with conscious disregard for plaintiff's rights" deprived them of associational rights, with the qualification immediately following that "[s]pecifically, Defendant knew, or should have known that by the actions set forth above, death was likely to occur, and the plaintiffs, and those they represent, would be denied the companionship and association of the decedent," does not meet the Trujillo requirement.

Bryson v. City of Edmond, 905 F.2d at 1393-94.

The Court finds that Coffey's allegations suffer the same infirmity as those in Bryson v. City of Edmond. Even if the County deliberately ignored Crutcher's medical needs there is simply nothing in the record, and nothing that came to light in the May 20th hearing, that indicated a specific intent to deprive Crutcher's mother and Crutcher's children of their associations with him. At most, Coffey's allegations state a *result*, not a *cause*, and that is insufficient under Trujillo v. Board of County Comm'rs.

Because Coffey's allegations are insufficient to state a claim for relief under § 1983 for the constitutional deprivation of the right to familial associations, Count VIII is dismissed with prejudice.

**IT IS ORDERED** that: (i) the Defendant's Motion to Dismiss (Doc. 47) is granted as to Counts II, IV, V, VI, VII, VIII, IX, and X are dismissed with prejudice for the reasons stated herein; and (ii) the Plaintiff shall have twenty days to amend her First Amended Complaint as to Count III.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Scott E. Borg
Barber & Borg, LLC
Albuquerque, New Mexico

-- and--

Robert R. Hager
Treva J. Hearne
Hager & Hearne
Reno, Nevada

    *Attorneys for the Plaintiff*

William D. Slease
Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendants*